## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDITH APONTE,** | | **CIVIL ACTION** |
| **Plaintiff,** | | |
| **v.** | | |
| **PHILADELPHIA GAS WORKS,** | | **NO.  23-3568** |
| **Defendant.** | | |

**HODGE, J.**                                                    **September 30, 2025**

### MEMORANDUM

On September 14, 2023, Plaintiff Edith Aponte ("Aponte" or "Plaintiff") filed this action against Defendant Philadelphia Gas Works ("PGW" or "Defendant"), alleging discrimination and retaliation on the basis of her race and/or sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981" or "§ 1981"); the Pennsylvania Human Relations Act, 43 P.S. § 951 ("PHRA"); and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1100 ("PFPO") (Counts I, III, IV, V, and VI). She also alleges retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA") (Count II). Specifically, Plaintiff claims she was denied a promotion to the role of Director of Fleet & Materials Management ("DFMM") in both 2020 and 2022.[1]

---

[1] Plaintiff was also denied a promotion to the DFMM position in 2019, but she does not seek relief for this denial "due to applicable statutes of limitations." (ECF No. 1 at 3.) However, Plaintiff may still present the 2019 denial as circumstantial evidence of Defendant's alleged discriminatory motive. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005) ("The statute of limitations requires that only one alleged adverse employment action have occurred within the applicable filing period. But, evidence of an earlier alleged retaliatory act may constitute relevant background evidence in support of that timely claim." (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (internal alterations and quotations omitted))); *Roebuck v. Drexel Univ.*, 852 F.2d 715, 733 (3d Cir. 1988) (holding that a decisionmaker's statements exhibiting racial bias could add support to the plaintiff's claim of

Presently before the Court is Defendant's Motion for Summary Judgment (ECF No. 17), Plaintiff's Response in Opposition (ECF No. 19), and Defendant's Reply in Support (ECF No. 20). For the following reasons, Defendant's Motion is granted.

## I.    BACKGROUND[2]

Plaintiff is a Hispanic woman who has worked at PGW since 2011. (ECF No. 17-4 at 1.) Plaintiff began her employment at PGW as a Staff Assistant. While there, Plaintiff ascended to other roles, including: (1) a Buyer I in 2012, (2) an Inventory Supervisor in 2014, (3) a Supervisor of Inventory Planning in 2015, and (4) a Manager of Materials Management in 2017. (*Id.*)

In March 2019, Plaintiff made a formal complaint regarding the alleged inappropriate behavior of her direct supervisor Frank Adams ("Adams"). (ECF No. 17-10 at 2.) Defendant found that Adams' conduct violated PGW's Anti-Harassment/Sexual Harassment policy and accordingly terminated him in April 2019. (*Id.* at 6–7; ECF No. 1 at ¶ 16.)

A month later, in May 2019, Defendant posted the DFMM position, which Plaintiff applied to and was interviewed for. (*Id.* at 2.) Ken Foran ("Foran"), a white man, was selected as Director. (*Id.*) However, due to Defendant later terminating Foran, the DFMM position was posted again in 2020, which Plaintiff again was interviewed for. (*Id.*) The position was awarded to another interviewee: Scott Dever ("Dever"), a white man. (*Id.*) The scoring for the 2020 interviews was conducted by Anthony Mauro ("Mauro"), Vice President of Supply Chain, and Racquel Kelly-McDonald ("Kelly-McDonald"), a Human Resources ("HR") employee. (*Id.*)

In 2022, Dever made the decision to leave his employment at PGW, meaning the DFMM position once again became vacant. (*Id.*) According to Mauro, however, the position's availability,

---

racial discrimination, even though they occurred too far in the past to stand alone as an incident of racial discrimination).

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

in this instance, was not posted because (1) he "was looking to fill the position as quickly as possible to have someone who can primarily focus on . . . overseeing the transition to . . . our new facility"; and (2) "we really wanted to get someone in place to work with [Dever] . . . for a little bit before he [left]." (ECF No. 17-12 at 93-94.) When asked in his deposition why he did not feel that making a job posting would advance his goals for the position, Mauro responded, "[W]ithin the last, like, four-year period, we had already posted and interviewed a number of candidates who we felt overall lacked the type of qualities that we needed for the director position. I didn't feel that posting it would result in a better candidate pool . . . ." (*Id.* at 94.) Mauro also testified that no one was interviewed for this position "[b]ecause we decided . . . to appoint rather than post, which . . . we have the ability to do [] under PGW's hiring policies." (*Id.* at 96.) Mauro recommended to Ray Welte ("Welte"), Senior Vice President of Operations and Supply Chain, that Dever be replaced by Bill Montgomery ("Montgomery"), a white man. Montgomery was ultimately hired as Director. (*Id.* at 95–96.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-movant bears the burden of proof, the movant's initial burden can be met

3

simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has met its initial burden, the non-movant's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-movant fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## III.    DISCUSSION

The Court begins with Plaintiff's discrimination claims before addressing her retaliation claims.

### A.    Discrimination Claims (Counts I, III, IV, V, and VI)

Plaintiff alleges that, in violation of Section 1981, Title VII, the PHRA, and the PFPO, respectively, Defendant failed to promote her to the DFMM positions in 2020 and 2022 because she is a Hispanic woman.

In order to establish a prima facie case for discrimination under the *McDonnell Douglas* burden-shifting framework,[3] a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff meets that

---

[3] *Williams v. Carson Concrete Corp.*, Civil Action No. 20-5569, 2021 U.S. Dist. LEXIS 75468, at *3 (E.D. Pa. Apr. 20, 2021) ("Claims of employment discrimination brought under Title VII, the PHRA, the PFPO, and Section 1981 are analyzed coextensively.").

burden, the burden of production shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant meets that burden, the burden shifts back to the plaintiff "to show that the defendant's proffered reason is merely pretext for intentional discrimination." *Id.*

Defendant argues that Plaintiff fails to establish a prima facie case because (1) she did not suffer an adverse employment action when she was not promoted to the DFMM position in 2022; and (2) even if she did suffer an adverse action in both 2020 and 2022, Plaintiff has not showed that these actions were taken under circumstances giving rise to an inference of discrimination. (ECF No. 17-2 at 8.)

For purposes of summary judgment only, if the Court were to presume that Plaintiff can establish that she suffered an adverse employment action when she was not promoted to the DFMM position in 2022, then the Court will therefore next consider whether Plaintiff can show that she was not promoted to either DFMM position under circumstances giving rise to an inference of discrimination. The Court finds that Plaintiff satisfies this element, for Defendant chose to hire a white male candidate instead of her in both 2020 and 2022. *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007) (finding inference of discrimination where a plaintiff was replaced by someone outside the protected class). Accordingly, Plaintiff's allegations meet the prima facie standard.

With the burden shifting to Defendant to proffer a legitimate, non-discriminatory reason for not promoting Plaintiff, Defendant argues that, as it pertains to the 2020 DFMM position, it hired Dever because he received an interview score of 7.2 while Plaintiff received a score of 6.4. (ECF No. 17-2 at 18; ECF No. 17-20 at 2.) Defendant additionally raises that in Mauro's notes from Plaintiff's interview, he wrote that, overall, Plaintiff was "nervous and unsure," "worries too

much," and "takes on too much herself." (ECF No. 17-17 at 6.) The Court finds that Defendant has satisfied its burden. *See Snooks v. Duquesne Light Co.*, 314 F. App'x. 499, 505 (3d Cir. 2009) (noting that defendant's preference of a candidate who scored better in an interview was a legitimate, non-discriminatory reason); *Cross v. New Jersey*, 613 F. App'x 182, 185 (3d Cir. 2015) (finding that plaintiff's poor performance during an interview was a legitimate, non-discriminatory reason not to promote her).

As it pertains to the 2022 DFMM position, Defendant's proffered reason for promoting Montgomery instead of Plaintiff is that, according to Mauro, Montgomery had "a lot of high level knowledge of [] fleet" and possessed "a lot of the qualities you would expect from someone in a director position." (ECF No. 17-12 at 99.) Meanwhile, Mauro testified that he did not recommend Plaintiff for the position because "she didn't have any meaningful fleet experience," (ECF No. 17-12 at 117), and Dever testified that he did not recommend her because of her "struggle with her confidence" and poor conflict management skills. (ECF No. 17-21 at 91.) The Court finds that Defendant has presented evidence that would permit the conclusion that there was a non-discriminatory reason for the challenged employment decision. *See Shahin v. Delaware*, 531 F. App'x. 200, 203 (3d Cir. 2013) (holding that plaintiff's lack of desirable experience relative to hired candidates was legitimate, non-discriminatory reason for not hiring plaintiff); *Taylor v. Harrisburg Area Cmty. Coll.*, 2014 WL 347036, at *12 (M.D. Pa. Jan. 30, 2014), *aff'd*, 579 F. App'x 90 (3d Cir. 2014) ("Defendant has offered legitimate, nondiscriminatory reasons for not promoting Plaintiff . . . namely that Plaintiff was not the most qualified individual for the position.").

It is Plaintiff's burden to prove that these were not Defendant's true reasons for not promoting her but were instead pretexts for discrimination. To do so, Plaintiff "must point to some

evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

"To discredit the employer's proffered reason, [] the plaintiff cannot simply show that the employer's decision was wrong or mistaken." *Id.* at 765 (citations omitted). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (internal quotation marks and citation omitted). The burden on a plaintiff is "difficult," *id.*, but as the Third Circuit has explained, "[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992).

To show that an invidious discriminatory reason was more likely than not a cause for the employer's action, "the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that [race] was a motivating or determinative factor in the employment decision." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644–45 (3d Cir. 1998). Examples include showing that the employer has previously discriminated against the plaintiff, that the employer has discriminated against members of the plaintiff's protected class or another protected class, or that similarly situated people not within plaintiff's class were treated more favorably. *See id.* at 645.

Plaintiff argues that there are four genuine issues of material fact from which a factfinder could infer that Defendant's stated reasons for not promoting her were pretextual.

### 1.    Relative qualifications of the candidates

First, Plaintiff argues that a jury could "easily conclude" that she was more qualified for the DFMM positions than Dever and Montgomery. (ECF No. 19 at 20.) However, "more than a denial of promotion as a result of a dispute over qualifications must be shown to prove pretext." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 170 (3d Cir. 1991) (internal quotation marks omitted). Even "[t]he fact that a court may think that the employer misjudged the qualifications of the applicant does not in itself expose him to Title VII liability . . . ." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992) (internal quotation marks omitted). Rather, to demonstrate pretext, Plaintiff must show "that the qualifications of the person actually promoted were *so much lower* than those of h[is] competitors that a reasonable factfinder could disbelieve the claim that the employer was honestly seeking the best qualified candidate." *Bray v. Marriott Hotels*, 110 F.3d 986, 999 (3d Cir. 1997) (Alito, J., dissenting). "In the absence of such a significant degree of difference in qualifications that may arouse a suspicion of discrimination, we defer to the employer's hiring decisions," *Steel v. Pelmor Lab'ys Inc.*, 642 F. App'x 129, 135 (3d Cir. 2016), as Title VII "was not intended to diminish traditional management prerogatives." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981) (internal quotation marks omitted).

Plaintiff cannot credibly claim that she is more qualified than Dever and Montgomery to the overwhelming extent required for her to prove pretext. With respect to Dever, it is true that Plaintiff has an MBA and Dever has only a bachelor's degree. But Dever had worked at PGW since 1991 while Plaintiff did not begin working there until 2011, and before applying to the

DFMM position in 2020, both Plaintiff and Dever possessed years' worth of managerial experience. Additionally, unlike Mauro's aforementioned less-than-favorable notes on Plaintiff's interview performance, Mauro commented in his notes from Dever's interview that, overall, Dever "gave good examples" and had "good leadership knowledge" and "overall PGW experience." In a similar vein, with respect to Dever, the scoresheet for the position states: "big picture," "large scale projects," "wide range of exp[erience]," and "bridged gap" between marketing/field operations and new business. (ECF No. 17-20 at 2.) In contrast, Plaintiff's scoresheet states: "maybe too hands on," "will be hard to let go + be strategic," and "would need coaching." (*Id.* at 3.)

With respect to Montgomery, in Mauro's memo recommending that he be promoted to the DFMM position, Mauro noted that Montgomery "has a Bachelor's degree in "Geography and Urban Studies, a Master's degree in Environmental Planning, [and] is an adjunct instructor at Community College of Philadelphia." (ECF No. 19-34 at 2.) Mauro also stated that Montgomery had served as the Manager of Controls, Analytics, and Office Services since 2017, and that in this role, he "regularly supports Materials Management and Fleet by performing data analysis, developing metrics and KPI's, assisting with efficiency improvement projects[,] and problem solving." (*Id.*) Furthermore, Mauro praised Montgomery as being "analytical, hard-working, customer-oriented, [and] organized," as well as "a team-player," "quick learner," and "strategic - thinker." (*Id.*)

Because Defendant "is permitted to decide which job criteria are important and to determine what skill set is most appropriate for a given position[,]" Plaintiff in turn fails to "establish pretext simply from the fact [that Defendant] valued [Dever and Montgomery's] skills

and experiences over the skills and experiences [she] brought to the table." *Nunn v. NHS Hum. Servs., Inc.*, 110 F. Supp. 3d 554, 568 (E.D. Pa. 2015).

### 2.    Defendant's alleged preference for white men

Second, Plaintiff argues that the fact Defendant has "never employed a woman in the DFMM position and hired white men for the position in 2019, 2020 and 2022 . . . reflects Defendant's clear preference for white men and casts their motives into doubt." (ECF No. 19 at 20.) Absent more, however, it would not be reasonable under current law for a jury to infer from the fact that a woman has never been the DFMM that Plaintiff was subjected to intentional discrimination because of her sex. "Any such inference would implicitly rely on the premise that people from social groups that historically have held power necessarily discriminate against those who have not," *Foley v. Drexel Univ.*, 2024 U.S. Dist. LEXIS 132321, at *18 (E.D. Pa. July 25, 2024), and because the Supreme Court has rejected the "presum[ption] that individuals will act a certain way based on their membership in a protected class," *Laveglia v. TD Bank, N.A.*, 2020 U.S. Dist. LEXIS 85659, at *3 (E.D. Pa. May 15, 2020), that inference would be improper.

Furthermore, while the record supports Plaintiff's contention that Defendant hired white men for the DFMM position in 2019, 2020, and 2022, *see* ECF No. 17-12 at 69, 82, and 95, "the race [and sex] of prior persons promoted is meaningless without evidence regarding whether [non-white male] applicants were denied the promotion or the relative qualifications of the applicants." *Boykins v. SEPTA*, 2017 U.S. Dist. LEXIS 56541, at *5 (E.D. Pa. Apr. 13, 2017). As relevant here, Plaintiff does not describe the qualifications of the other applicants over the years. Thus, because no conclusion can be drawn from the underrepresentation of women in the DFMM position, it is not probative of Defendant's alleged discriminatory motive.

### 3.    Interview criteria

Third, Plaintiff argues that, in the hiring process for the DFMM position in 2020, Defendant considered and applied inconsistent and subjective criteria, such as leadership and confidence. (ECF No. 19 at 21.) The Court disagrees. In his deposition, Mauro confirmed that the scores he and Kelly-McDonald assigned were based upon their "interpretation of an applicant's answers during the interview process" as well as on the candidates' resumes. (ECF No. 17-12 at 121–22.) Plaintiff points to no evidence in the record suggesting that Mauro and Kelly-McDonald's scoring was influenced by prejudice, and "belief alone is insufficient to raise an issue of material fact." *Bray*, 110 F.3d at 996.

### 4.    Plaintiff's reluctance to apply

Lastly, Plaintiff argues that Defendant's claim that she was afraid to apply for the DFMM position in 2020 is untrue. (ECF No. 19 at 21.) However, in addition to Mauro writing down during Plaintiff's interview that she "was afraid to apply" and "decided @ last minute," (ECF No. 17-17 at 2), Plaintiff's deposition testimony actually buttresses Defendant's claim. Indeed, Plaintiff stated that she was unsure about the position because, if selected, she would have to "handle two whole departments by [her]self" while working in the office alone. (ECF No. 17-5 at 126.)

Viewed together and in the light most favorable to Plaintiff, the "evidence" pointed to by Plaintiff is insufficient for a reasonable fact finder to conclude that race or sex played a role in Defendant's decision not to promote her to the DFMM positions in 2020 and 2022. Thus, the Court grants summary judgment in favor of Defendant on Plaintiff's discrimination claims under Section 1981, Title VII, the PHRA, and the PFPO.

### B.    Retaliation Claims (Counts II and IV)

Plaintiff asserts two theories of retaliation as it relates to the 2022 DFMM position: (1) Defendant violated Title VII by not promoting her "due to her complaints of sexual harassment [in

2019]," and (2) Defendant violated the FMLA by not promoting Plaintiff "because of her history of FMLA usage." (ECF No. 1 at ¶¶ 39, 46.)

Like Plaintiff's discrimination claims, courts analyze Title VII and FMLA retaliation claims using the burden-shifting framework outlined in *McDonnell Douglas*. *See Tomaszewski v. City of Philadelphia*, 460 F. Supp. 3d 577, 593 (E.D. Pa. 2020); *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014). A plaintiff alleging retaliation under Title VII or the FMLA generally must establish the following to make a prima facie case: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between her protected activity and the adverse employment action. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)); *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 152 n.6 (3d Cir. 2017) (citing *Ross*, 755 F.3d at 193).

The Court finds that even if Plaintiff can meet her burden of proving a prima facie case, she cannot prove that Defendant's legitimate, non-discriminatory reason for not promoting her to the DFMM position in 2022 was pretextual. In her Response in Opposition to Defendant's Motion, Plaintiff explicitly refers to the pretext arguments she made for her discrimination claims as support for her retaliation claims. (ECF No. 19 at 31.) Because Plaintiff's pretext arguments for her discrimination claims have already been rejected, the Court in turn grants summary judgment in favor of Defendant on Plaintiff's Title VII and FMLA retaliation claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Defendant on all Counts (I-VI) of Plaintiff's Complaint. An appropriate Order follows.

BY THE COURT:

/s/ Kelley B. Hodge

_____

 HODGE, KELLEY B., J.